# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WASHINGTON CROWN CENTER REALTY HOLDING LLC, | : <br> : <br> : CIVIL ACTION NO. 2:20-cv-1997 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| HOLLYWOOD THEATERS, INC., | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Washington Crown Center Realty Holding LLC ("Plaintiff" or "Landlord") hereby files the following Complaint against the above-named Defendant Hollywood Theaters, Inc. ("Defendant" or "Tenant").

## INTRODUCTION

1. This action involves a commercial lease, as amended from time to time, for certain premises at the Washington Crown Center mall, located at 1500 West Chestnut Street, Washington, Pennsylvania (the "Mall") to be utilized by Tenant as a movie theater.

2. As of April 2020, without basis, justification, or the permission of Landlord, Tenant simply ceased paying its base minimum rent and additional rent, as required under the lease, and has not paid rent since its last payment on March 3, 2020 for the month of March 2020.

3. Thus, as of the date of the filing of this Verified Complaint, Tenant is in arrears approximately $360,249.48, not including interest and attorneys' fees and costs.

4. Landlord's efforts to cause Tenant to cure these defaults have not been successful, and Tenant steadfastly refused to pay the arrears and cure its defaults.

5. Therefore, Plaintiff filed this action for breach of lease for unpaid rent, along with interest and attorneys' fees.

## PARTIES

6. Plaintiff Washington Crown Center Realty Holding LLC is a Pennsylvania limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, and successor-in-interest to the original landlord, with an office at Washington Crown Center Realty Holdings, LLC, c/o Management Office, 1500 West Chestnut Street, Washington, Pennsylvania 15301. Plaintiff owns and operates the Mall in which Tenant operates. For citizenship and diversity purposes, Plaintiff is owned by a number of individuals and other limited liability companies, themselves owned by individuals, all of whom are citizens of either New York, New Jersey, or Florida.

7. Defendant Hollywood Theaters, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware operating at 1500 West Chestnut Street, Washington, Pennsylvania 15301, and with an office c/o Regal Entertainment Group, 101 E. Blount Avenue, Knoxville, Tennessee 37920, Attn: Real Estate Department. Tenant operates the movie theater at the Mall, currently doing business under the Regal Entertainment Group brand.

## JURISDICTION & VENUE

8. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because it involves a matter in controversy exceeding the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship among the parties — with Plaintiff a citizen of New York, New Jersey, and Florida, and Defendant a citizen of Delaware and either Pennsylvania or Tennessee.

9.  Venue is appropriate in this Court under 28 U.S.C. § 1391 because in Washington County, Pennsylvania because Defendant's principal place of business is located in this District, a substantial part of the events that gave rise to this action in this District, and the property that is the subject of the lease and this action is within this District.  For the same reasons, this Court has personal jurisdiction over Defendant.

## FACTS

### *The Lease*

10.  On or around March 31, 1998, Crown American Financing Partnership, a predecessor-in-interest to Landlord, and Tenant entered into that certain Lease Agreement pertaining to the construction and operation of a fourteen-screen movie theater at the Mall (the "Original Lease," and as thereafter amended, collectively, the "Lease").  A true and correct copy of the Original Lease is attached hereto as Exhibit A.

11.  The term of the Original Lease was a period of twenty years running from the Commencement Date, defined as the delivery of the premises to Tenant with certain sitework completed as set forth in the Original Lease (¶¶ 3, 10).

12.  The initial term of the Original Lease was set to expire on May 8, 2019, but was subsequently extended as set forth below.

13.  The Original Lease provided for base rent escalating each five year period of the initial twenty year term, starting at $557,900.00 annually through $641,585.00 in the last five years of the initial term.  Original Lease ¶ 4(a).

14.  Such base rent was due in equal monthly installments on the first day of each calendar month, with such payment deemed timely if mailed or posed for delivery on or before the first day of the calendar month.  Original Lease ¶ 4(a).

15. The Original Lease also provided for "Percentage Rental," which was set at eight percent (8%) of gross sales in excess of a set base, with such payment to be made on March 15 of the year following the prior calendar year. Original Lease ¶ 4(b).

16. Tenant was also liable to pay "Tax Rent," which was defined as a pro rata proportion of the taxes, assessments, use and occupancy taxes, water and sewer charges, excises, levies, impositions, and other charges by public authorities based on the leasable square footage of Tenant's premises over the entire Mall's leasable square footage. Original Lease ¶ 7.

17. Tenant was also liable to pay "Common Area Rent," which was defined as a set rate escalating over each five year period of the initial term of the Lease times the square footage of Tenant's premises. Original Lease ¶ 11(c).

18. The Original Lease was amended by that certain First Amendment of Lease, dated August 27, 1998 (the "First Amendment"), which, among other things, amended the rent commencement date set forth in Article 5 of the Original Lease, amended certain details regarding the Improvements having been constructed as set forth in Article 10, Paragraph 4 of the Original Lease, deleted Tenant's option to terminate in Article 38 of the Original Lease, and otherwise confirmed that all other terms and provisions of the Original Lease remained unaltered and in full force and effect. A true and correct copy of the First Amendment is attached hereto as Exhibit B.

19. The Lease was subsequently amended again by that certain Second Amendment of Lease, dated June 28, 1999 (the "Second Amendment"), which, among other things, amended certain parking and access easements, altered the rent amounts for certain months in 1999 and the additional Tax Rent, amended certain provisions pertaining to construction, common areas, employee parking, and several exhibits, and otherwise confirmed that all other terms and

provisions of the Lease remained unaltered and in full force and effect. A true and correct copy of the Second Amendment is attached hereto as <u>Exhibit C</u>.

20. The Lease was subsequently amended again by that certain Third Amendment of Lease, dated April 23, 2001 (the "<u>Third Amendment</u>"), which, among other things, amended certain base and percentage rent, adjusted the square footage of the floor area of the Improvements and corresponding Construction Allowance, amended Exhibit D to the Lease, and otherwise confirmed that all other terms and provisions of the Lease remained unaltered and in full force and effect. A true and correct copy of the Third Amendment is attached hereto as <u>Exhibit D</u>.

21. The First Amendment, Second Amendment, and Third Amendment did not alter the initial term, set to end May 8, 2019, or any other terms of the Original Lease not expressly amended by such amendments.

22. The Lease was subsequently amended again by that certain Fourth Amendment to Lease, dated April 26, 2019 (the "<u>Fourth Amendment</u>"). A true and correct copy of the Fourth Amendment is attached hereto as <u>Exhibit E</u>.

23. In addition to amending a number of other provisions and exhibits not relevant to this action, the Fourth Amendment extended the Initial Term of the Lease for approximately two years, with such period commencing on May 9, 2019 and expiring on May 31, 2021. Fourth Amendment ¶ 1.

24. Starting on May 9, 2019, defined as the "Effective Date," the Fourth Amendment set the new rent for the remaining approximate two-year term as (i) $24,947.52 for the month of May 2019; and (ii) $35,153.33 in base rent for the remaining portion of the extended Initial Term (or $421,839.96 annually). Fourth Amendment ¶ 3.

25. During the extended Initial Term, the Common Area Rent was $1,802.43 per month, as calculated pursuant to the formula in the Lease discussed above.

26. During the first year of extended Initial Term, the Tax Rent was $27,647.62 for 2019, which was invoiced on February 1, 2020 and Tenant paid on February 13, 2020.  See Exhibit H (as described below).

27. Finally, like each prior amendment, the Fourth Amendment expressly ratified the terms and conditions contained in the Original Lease, as amended, which remained in full force and effect.  Fourth Amendment ¶ 10.

### *Tenant Defaults on its Payment Obligations Under the Lease*

28. Although Tenant timely satisfied its payment obligations through March 2020, Tenant simply ceased making its payments of base rent and Common Area Rent starting in April 2020.

29. It is obvious that Tenant unilaterally, and without consultation with and the agreement of Landlord, determined to use the COVID-19 health crisis — which negatively affected Landlord as well — to cease making its rent payments under the Lease.

30. Under Paragraph 29 of the Lease, defaults in the payment of any installment of a monetary obligation were subject to a ten (10) day notice and cure provision prior to such default constituting an Event of Default under the Lease.  Original Lease ¶ 29(1).

31. If there is an Event of Default under the Lease, Landlord was entitled to pursue its remedies and damages, either at law or in equity, and, additionally, to cancel and terminate the Lease if it so chose.

32. Under Paragraph 36 of the Lease, the prevailing party in this action may be entitled to reasonable attorneys' fees and costs.  Original Lease ¶ 36.

33. On July 17, 2020, Landlord sent a default notice to Tenant via Certified Mail, as required by the Notice provisions in the Fourth Amendment (¶ 7), advising Tenant that it had failed to pay four months of base rent and Common Area Rent between April and July 2020, totaling $147,823.04 (the "First Default Notice"). A true and correct copy of the First Default Notice is attached hereto as Exhibit F.

34. Tenant did not make such payments as required to cure the default.

35. In fact, Tenant continued to fail to meet its monetary obligations under the Lease, and failed to pay any rent in August 2020 as well.

36. On August 28, 2020, Landlord sent another default notice to Tenant via Certified Mail advising Tenant that it had now failed to pay five months of base rent and Common Area Rent between April and August 2020, totaling $184,778.80 (the "Second Default Notice"). A true and correct copy of the Second Default Notice is attached hereto as Exhibit G.

37. Tenant did not thereafter make any such payments as required to cure the default.

38. Tenant has also failed to pay its pro rata share of Tax Rent in the amount of $2,303.97 per month attributable to each monthly period from January 2020 to present.

39. Tenant also failed to pay any rent in September, October, November, and December 2020 as well, increasing Tenant's arrears to $360,249.48. A true and correct copy of a tenant rent ledger through the date of the filing of this action is attached hereto as Exhibit H.

40. Although the continued submission of additional default notices is apparently futile, Tenant, by and through counsel, sent another default notice, dated December 23, 2020, pertaining to these four additional months of monetary defaults plus the refusal to pay the Tax Rent, leading to the arrears specified above ("Third Default Notice"). A true and correct copy of the Third Default Notice is attached hereto as Exhibit I.

41. Landlord's efforts to resolve these Events of Default with Tenant have been rebuffed.

42. Worse, with the extended Initial Term of the Lease expiring soon, on May 31, 2021, only five months of rent from the filing of this complaint, it is clear that Tenant has simply determined to walk away from its obligations under the Lease.

43. On a call between Landlord's principal and Tenant's representative, Jerry Grewe, during the week of August 31, 2020, Tenant informed Landlord as much, indicating that they would simply walk away from their soon-expiring Lease, potentially only leaving equipment behind that Landlord would be forced to figure out how to liquidate or use for a new tenant.

44. As such, because Tenant has failed to timely pay the foregoing amounts, Landlord is entitled to immediate judgment in the amount of $360,249.48 for past due Base Rent, Common Area Rent, and Tax Rent, increasing each additional month of non-payment, plus interest and attorneys' fees and costs.

45. Furthermore, given Tenant's clear and unequivocal repudiation of its obligations under the Lease going forward through the expiration of the extended Initial Term of the Lease on May 31, 2021, Landlord is entitled to judgment for all amounts due and owing under the Lease through May 31, 2021, including $35,153.33 per month in Base Rent, $1,802.43 per month in Common Area Rent, and its pro rata share of the taxes constituting its Tax Rent once set by the taxing authorities, plus interest and attorneys' fees and costs.

## CAUSES OF ACTION

### COUNT ONE – BREACH OF LEASE (CONTRACT)

46. Plaintiff re-alleges and incorporates the preceding paragraphs by reference herein with the same force and effect as if set forth in full below.

47. The Lease is a binding contract between Landlord and Tenant.

48. Pursuant to the Lease, Defendant is required to pay $35,153.33 per month in Base Rent during the extended Initial Term (as set forth in the Fourth Amendment).

49. Pursuant to the Lease, Defendant is required to pay $1,802.43 per month in Common Area Rent.

50. Pursuant to the Lease, Defendant is required to pay Tax Rent, which, for 2020, was $2,303.97 per month.

51. Tenant has breached those obligations by failing to pay both Base Rent and Common Area Rent between April 2020 and December 2020, in the total sum of $332,601.84, despite receiving notice and opportunity to cure.

52. Tenant has also failed to pay its Tax Rent for the period from January 2020 through December 2020, in the total sum of $27,647.64.

53. Tenant has been notified of the foregoing defaults as set forth more fully above and has refused to cure these defaults.

54. Given its failure to respond to Landlord's multiple entreaties to fulfill its obligations under the Lease, it appears that Tenant will continue to breach its obligations throughout the remainder of the extended Initial Term of the Lease (ending May 31, 2021 under the terms of the Fourth Amendment)

55. Landlord has complied with its obligations under the Lease, and Tenant has no justification for failing to satisfy its obligations.

56. Thus, Landlord has been damaged in the amounts set forth above, totaling $360,249.48 as of the date of filing of this action, and increasing with each passing month of non-

payment, along with interest and attorneys' fees and costs, with all such amounts to be proved at trial.

## COUNT TWO – ANTICIPATORY REPUDIATION OF LEASE (CONTRACT)

57. Plaintiff re-alleges and incorporates the preceding paragraphs by reference herein with the same force and effect as if set forth in full below.

58. This Count is in addition to and in the alternative to Count One. For each month that passes, Tenant is liable under Count One of this Complaint. However, to the extent judgment may be entered in Landlord's favor prior to May 31, 2021, the end of the extended Initial Term of the Lease, Landlord seeks judgment under this Count as well rather than be forced to amend its complaint or file a separate action.

59. As stated above, the Lease is a binding contract between Landlord and Tenant.

60. Pursuant to the Lease, Defendant is required to pay $35,153.33 per month in Base Rent during the extended Initial Term (as set forth in the Fourth Amendment).

61. Pursuant to the Lease, Defendant is required to pay $1,802.43 per month in Common Area Rent.

62. Pursuant to the Lease, Defendant is required to pay Tax Rent in an amount set by public authorities and apportioned to Tenant as set forth in the formula in the Lease.

63. Tenant has been notified of the default as set forth more fully above and has refused to cure these defaults.

64. Tenant's communications to Landlord have clearly and unequivocally demonstrated that Tenant has determined to simply walk away from the soon-expiring Lease. Thus, given its failure to respond to Landlord's multiple entreaties to fulfill its obligations under the Lease, along with Tenant's rejection of its obligations under the Lease and/or its statements

regarding its inability to do so through the end of the extended Initial Term of the Lease on May 31, 2021, Tenant has anticipatorily repudiated, and therefore breached, its obligations under the Lease.

65. Landlord has complied with its obligations under the Lease, and Tenant has no justification for failing to satisfy its obligations.

66. Thus, Landlord has been damaged in the amounts set forth above due monthly, totaling $184,778.80 from January 2021 through May 2021, comprising Base Rent and Common Area Rent, and not including Tax Rent, which is calculated following delivery of assessments at the conclusion of the calendar year, along with interest and attorneys' fees and costs, with all such amounts to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Washington Crown Center Realty Holding, LLC requests that the Court enter judgment in favor of Plaintiff and against Defendant Hollywood Theaters, Inc. as follows:

a. Enter judgment against Defendant for monetary damages suffered by Plaintiff as a result of Defendant's breach of the Lease, including an award of interest and attorneys' fees and costs, in an amount to be proven at trial;

b. Enter judgment against Defendant for monetary damages suffered by Plaintiff as a result of Defendant's anticipatory repudiation of the Lease from January 2021 through the termination of the extended Initial Term of the Lease on May 31, 2021, including an award of interest and attorneys' fees and costs, in an amount to be proven at trial;

c. Any such other relief as the Court deems necessary and proper at law or in equity.

Respectfully submitted,

DATED: December 23, 2020

COZEN O'CONNOR

By: _____

Jesse Ryan Loffler, Esquire (320962)
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
(412) 620-6500

*Attorneys for Plaintiff*
  *Washington Crown Center Realty Holding LLC*

12