IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WASHINGTON CROWN CENTER REALTY HOLDING LLC, )<br>)<br>) | |
| Plaintiff, )<br>) | Civ. A. No. 20-1997 |
| vs. )<br>) | |
| HOLLYWOOD THEATERS, INC., REGAL ENTERTAINMENT GROUP, and REGAL CINEMAS, INC., )<br>)<br>)<br>) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**[1]

This breach of contract action centers on a commercial lease agreement between Plaintiff Washington Crown Center Realty Holding LLC ("Washington Crown") and Defendant Hollywood Theaters, Inc. ("Hollywood Theaters") for property located at Washington Crown Center Mall in Washington, Pennsylvania. Among the issues in dispute is the applicability of the lease's force majeure provision.

Presently before the Court is Washington Crown's Partial Motion for Judgment on the Pleadings. (Doc. No. 29.) For the reasons discussed below, its motion is denied.

I.   **Relevant Procedural History**

Washington Crown instituted this breach of contract action against Hollywood Theaters in December 2020. (ECF No. 1.) After Hollywood Theaters filed its Answer and Affirmative Defenses, Washington Crown sought leave to file an amended complaint, which this Court granted. (ECF Nos. 17-18.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

1

Washington Crown subsequently filed its Amended Complaint in which it asserted a breach of contract claim against Hollywood Theaters as well as Regal Entertainment Group and Regal Cinemas, Inc. ("Regal Defendants"). (ECF No. 19.) After all defendants filed their Answers, Washington Crown filed a Partial Motion for Judgment on the Pleadings. (ECF No. 29.) In its motion, Washington Crown seeks a judgment that Hollywood Theaters is liable to Washington Crown in the amount of $545,028.28, plus tax rent, attorneys' fees and costs and prejudgment interest. It also seeks an order striking and dismissing with prejudice the first through sixth and eighth through tenth affirmative defenses that are pleaded in the Answer and Affirmative Defenses of Hollywood Theaters and the Answer and Affirmative Defenses of the Regal Defendants. (*Id.*)[2]

Washington Crown's motion has been fully briefed (ECF Nos. 30; 34), and is ripe for disposition.

**II.    Relevant Factual Background**

On March 31, 1998, Crown American Financing Partnership and Hollywood Theaters entered into a commercial lease relating to the construction and operation of a movie theater at the Washington Crown Center Mall (the "Lease"). (ECF Nos. 19 ¶¶ 1, 13; 27 ¶¶ 1, 13; 28 ¶¶ 1, 13.) Washington Crown is a successor-in-interest to the Lease. (ECF No. 19-6.) Multiple amendments of the Lease occurred thereafter (ECF Nos. 19 ¶¶ 21-24; 27 ¶¶ 21-24; 28 ¶¶ 21-24), including a "Fourth Amendment to Lease" dated April 26, 2019. (ECF Nos. 19 ¶ 25; 27 ¶ 25; 28 ¶ 25.) The Fourth Amendment extended the term of the Lease for two years, specifically, from May 9, 2019, until May 31, 2021. (ECF Nos. 19 ¶ 26; 27 ¶ 26; 28 ¶ 26.) In the Fourth Amendment, Hollywood

---

[2] The deadline for fact discovery has been extended generally pending resolution of Washington Crown's motion. (ECF No. 37.)

Theaters agreed to pay base rent in the amount of $24,947.52 for May 2019 after which time the amount of base rent increased to $35,153.33.  (ECF Nos. 19 ¶ 27; 27 ¶ 27; 28 ¶ 27.)  Additionally, Hollywood Theaters was required to pay $1,802.42 per month for rent of the common area as well as tax rent.  (ECF Nos. 19 ¶¶ 28-29; 27 ¶¶ 28-29; 28 ¶¶ 28-29.)  The Fourth Amendment expressly incorporated the terms and conditions contained in the original Lease, as amended.  (ECF Nos. 19 ¶ 30; 27 ¶ 30; 28 ¶ 30.)

The Lease includes the following provision:

> **19.     Force Majeure.**  Delays in the performance by either Landlord or Tenant of the obligations contemplated under this Lease due to fire, flood, earthquake or unusual weather conditions, unavailability of materials, equipment or fuel, war, declaration of hostilities, revolt, civil commotion, strike, labor dispute, or epidemic, lack of or failure of transportation facilities, or because of any acts of God or for any other cause beyond the reasonable control of either Landlord or Tenant shall be deemed events of force majeure ("Force Majeure Events") and such delays shall be excused.

(*See* ECF No. 19-1, at § 19).

Hollywood Theaters last paid rent to Washington Crown in March 2020.  (ECF Nos. 19 ¶¶ 2, 32; 27 ¶¶ 2, 32; 28 ¶¶ 2, 32).  Beginning in April 2020, it ceased making payments of base rent and common area rent.  (ECF Nos. 19 ¶ 31; 27 ¶ 31; 28 ¶ 31.)  Hollywood Theaters closed all of its theaters, including the theater in the Washington Mall, on March 17, 2020, in response to COVID-19 pandemic.  (ECF No. 27, Eighth Affirmative Defense.)  Hollywood Theaters asserts that it was relieved from making rent payments as a result of an event of force majeure, which it identifies as the "epidemic clause."  (ECF No. 27 ¶¶ 3, 31, Eighth Affirmative Defense.)

The Lease includes a notice and cure provision.  (ECF Nos. 10 ¶ 33; 19-1 ¶ 29; 27 ¶ 33; 28 ¶ 33.)  If Hollywood Theaters does not meet its payment obligations within ten days after receiving notice that it is in default, Washington Crown can file suit against it and cancel the Lease.  (ECF Nos. 19 ¶¶ 33-34; 19-1 ¶ 29; 27 ¶¶ 33-34; 28 ¶¶ 33-34.)  Notice of default was sent to Hollywood

Theaters on July 17, 2020, in which Washington Crown advised Hollywood Theaters that it owed four months of base and common area rent in the total amount of $147,823.04. (ECF Nos. 19 ¶ 36; 27 ¶ 36; 28 ¶ 36.) A second notice of default was sent to Hollywood Theaters on August 28, 2020, and a third on December 23, 2020. (ECF Nos. 19 ¶¶ 39, 43; 27 ¶¶ 39, 43; 28 ¶¶ 39, 43.) Hollywood Theaters made no further payments after its March 2020 payment. (ECF Nos. 19 ¶¶ 40-41; 27 ¶¶ 40-41; 28 ¶¶ 40-41.) The Lease expired on May 31, 2021, and has not been renewed or extended. (ECF No. 27 ¶ 45.)

Washington Crown alleges that both of the Regal Defendants are affiliates of Hollywood Theaters. Further, it pleads that one or both operated the movie theater at the Washington Mall along with Hollywood Theaters and "either assumed the Lease and/or is [Hollywood Theater's] alter ego." (ECF No. 19 ¶¶ 9, 10.) The Regal Defendants deny operating the theater and aver that they never assumed any obligations under the Lease and are not alter egos of Hollywood Theaters. (ECF No. 28 ¶¶ 9, 10.)

Both Hollywood Theaters and the Regal Defendants have asserted various affirmative defenses in their respective Answers.[3] In the Eighth Affirmative Defense in their respective Answers, Defendants allege the following:[4]

> [Hollywood Theaters]'s premises closed on March 17, 2020 when Answering Defendant closed all theaters nationwide in response to the growing COVID-19 pandemic. All major movie theater circuits, including AMC, Cinemark, Cineplex Odeon, Marcus, and Harkins, and numerous smaller circuits and independent theater operators, also ceased operations on or about March 17, 2020 in response to the growing COVID-19 pandemic. When states across the nation began implementing shut-down orders in March and April, ostensibly all major studios, including Warner Brothers, Walt Disney, Sony, and NBCUniversal, began postponing or canceling the theatrical release of major films. Answering

---

[3] Washington Crown's motion seeks to strike all affirmative defenses other than those that relate to the alter ego issue.
[4] All parties utilize the facts asserted in Defendants' defenses as part of their briefing on Washington Crown's motion. Affirmative defenses are part of the pleadings. Fed. R. Civ. P. 8.

4

> Defendant, and other theaters, rely on the release of new movies in order to attract customers and generate revenue. COVID-19 has upended the traditional motion-picture distribution model, essentially shutting down the theater industry. There have been a small number of major theatrical releases since March 2020 and major studios repeatedly have pushed back the dates for anticipated releases of any major films to theaters such as Answering Defendant and have released some films originally slated for theatrical release directly to in-home streaming platforms.

(ECF Nos. 27; 28.) Similarly, their Ninth Affirmative Defense states:

> On March 16, 2020, Pennsylvania Governor Tom Wolf issued guidance recommending that non-essential businesses in Washington County, including movie theaters, [close] due to the health risks posed by COVID-19 to the public. On March 19, 2020, Governor Tom Wolf ordered all non-life-sustaining businesses in Pennsylvania, including movie theaters, to close their physical locations. On April 1, 2020, Governor Wolf issued a statewide Stay-at-Home Order, providing that "all individuals residing in the Commonwealth are ordered to stay at home except as needed to access, support, or provide life-sustaining business, emergency, or government services." On April 20, 2020, Governor Wolf extended the statewide Stay-at-Home Order until May 8, 2020. On May 7, 2020, Governor Wolf issued an order for the "Limited Opening of Businesses, Lifting of Stay at Home Requirements, and Continued Aggressive Mitigation Efforts," which provided for the limited reopening of businesses in certain counties, and extended the statewide Stay-at-Home Order for all other counties, including Washington County, until June 4, 2020. On May 28, 2020, the order for the "Limited Opening of Businesses, Lifting of Stay at Home Requirements, and Continued Aggressive Mitigation Efforts" was amended to include Washington County. The May 28, 2020 Order specifically mandated that all entertainment businesses, including movie theaters, remain closed. On June 18, 2020, Governor Wolf amended the order for the "Continued Reopening of the Commonwealth" to include Washington County. The June 18, 2020 Order specifically prohibited all entertainment businesses, including movie theaters, from operating in excess of 50% occupancy. Under the guidance issued by the Commonwealth of Pennsylvania (the "Guidance"), in addition to the general limitation that movie theaters operate at no more than 50% of the total occupancy stated on their occupancy permit, each individual movie showing is subject to limitations on the total number of individuals permitted inside the theater. The Guidance specifically provides that all facilities and venues must enforce social distancing requirements, which may limit occupancy below the general 50% attendance limit. The Guidance also provides that businesses should include staff and employees when considering their occupancy limit or crowd gathering size. Due to the rising number of COVID-19 cases in the Commonwealth, on July 15, 2020, Governor Wolf issued an order prohibiting indoor events and gatherings of more than 25 persons. On December 10, 2020, Governor Wolf issued a "Limited-Time Mitigation Order." The December 10, 2020 Order specifically prohibited all entertainment businesses, including movie theaters, from operating until January 4, 2021.

5

(ECF Nos. 27; 28.)

Defendants also assert the doctrines of impossibility, impracticability and frustration of purpose in their respective Tenth Affirmative Defense. (ECF Nos. 27; 28.)

**III.     Legal Standard**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[J]udgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Yulia S. v. Hatboro-Horsham Sch. Dist.*, Case No. 2:21-cv-02011-JDW, 2021 WL 5298990, at *2 (E.D. Pa. Nov. 15, 2021) (quoting *Rosenau v. Unifund Corp.*, 539 F. 3d 218, 221 (3d Cir. 2021)). "A material issue of fact that will prevent a motion under Rule 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings. It also may result from the defendant pleading new matter and affirmative defenses in his answer." *Morris v. W. Manheim Twp.*, Civ. A. No. 1:CV–12–1647, 2014 WL 582265, at *2 (M.D. Pa. Feb. 14, 2014) (quoting Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, § 1367). *Republic Franklin Ins. Co. v. Travelers Cas. Ins. Co. of Am.*, Civ. A. No. 2:17-04593, 2018 WL 1420495, at *2 (D.N.J. Mar. 22, 2018) (quoting *Gen. Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)) ("[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings").

"When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that

scenario." *Yulia S.*, 2021 WL 5298990, at *2 (citing *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021)).  *See State Farm Fire & Cas. Co. v. Walker*, Civ. A. No. 21-cv-3325, 2021 WL 5050102 (E.D. Pa Oct. 29, 2021).  "[A] court may consider 'the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record.'" *Burlington Ins. Co. v. Shelter Structures, Inc.*, 484 F. Supp. 3d 237, 240 (E.D. Pa. Sept. 4, 2020) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).  *See generally Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 781 F. App'x 57, 59 n.3 (3d Cir. 2019).

## IV. Discussion

In moving for judgment on the pleadings, Washington Crown argues: (1) the Lease's force majeure clause does not apply because it cannot be invoked to forever abate rent; (2) if it does apply, at minimum, Washington Crown is entitled to judgment on the pleadings in its favor against Hollywood Theaters for monies owed during the time in which Hollywood Theaters admits it could have opened its doors but chose not to do so; (3) the defenses of impossibility, impracticability, and frustration of purpose are unavailable to Defendants because the Lease includes a force majeure clause; and (4) all of the remaining defenses are various iterations of the force majeure clause and the common law defenses of impossibility, impracticability, and frustration of purpose.  (ECF No. 30 at 5-6.)

Washington Crown acknowledges, however, that whether either or both of the Regal Defendants are alter egos of Hollywood Theaters or are otherwise liable as successors-in-interest to the Lease cannot be determined from the face of the pleadings.  (*Id.*.)

Defendants assert that the Lease's force majeure clause excuses the payment of any rent during a force majeure event.[5] (ECF No. 34 at 6.) They argue that because Governor Wolf's orders demonstrate the presence of an ongoing epidemic (*Id.* at 7-8), any delay in payment owed is excused under the force majeure provision for the duration of the epidemic. (*Id.* at 10.) Moreover, because the duration of the epidemic is an issue for the factfinder, Defendants contend that Washington Crown is not entitled to judgment on the pleadings. (*Id.* at 10-11.) Lastly, Defendants argue that Washington Crown's request to dismiss with prejudice various affirmative defenses is actually a motion to strike and should be denied both because it is procedurally improper and because motions to strike are largely treated with disfavor. (*Id.* at 13.)

The Lease provides, and the parties agree, that Pennsylvania law governs its interpretation. (ECF No. 19-1 ¶ 37). To prevail on a breach of contract claim, Washington Crown must show, "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ricoh USA, Inc. v. Innovative Software Sol., Inc.*, No. CV 20-4025, 2020 WL 7024290, at *7 (E.D. Pa. Nov. 30, 2020) (quoting *Cosby v. Am. Medica, Inc.*, 197 F. Supp. 3d 735, 739 (E.D. Pa. 2016)).

"In Pennsylvania, parties have broad discretion to allocate risks between them in a contract." *1600 Walnut Corp. v. Cole Haan Co. Store*, 530 F. Supp. 3d 555, 558 (E.D. Pa. 2021) (quoting *Albert M. Greenfield & Co. v. Kolea*, 380 A.2d 758, 760 (Pa. 1977)). One of the ways that parties can do so is by incorporating a force majeure clause. Generally speaking, "[a] force majeure clause lists a series of events such as earthquakes, storms, floods, natural disasters, wars,

---

[5] It is unclear if Defendants take the position that they are permanently excused from paying rent during every month in which they ceased operations due to the epidemic or whether they contend that they are permitted to delay their obligations until a determination has been made that the epidemic has ended.

or other 'acts of God' which the parties to a contract have agreed upon as excuses for nonperformance." *Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.*, 53 A.3d 53 (Pa. Super. 2012) (quoting Murray on Contracts 639 (1990)). "To determine whether a certain event excuses performance," courts look to the express language of the contract to derive the parties' intent. *Morgantown Crossing, L.P. v. Manufacturers & Traders Trust Co.*, Civ. A. No. 03-cv-4707, 2004 WL 2579613, at *6 (E.D. Pa. Nov. 10, 2004) (quoting *R. & H. Falcon Drilling Co. v. American Exploration Co.*, 154 F. Supp .2d 969, 973 (S.D. Tex. 2000)).

Here, Defendants assert that no breach of the lease has occurred because Hollywood Theaters' performance was excused. In so arguing, Defendants rely on various defenses, including the lease's force majeure provision. *See id.* at *8 (quoting 30 Richard Lord, Williston on Contracts § 77:31 (4th ed. 2008) ("A claim of force majeure is equivalent to an affirmative defense").

In the force majeure provision, the parties agreed that "delays in the performance by either Landlord or Tenant of the obligations contemplated under this Lease due to . . . epidemic . . . or for any other cause beyond the reasonable control of either Landlord or Tenant shall be deemed events of force majeure . . . and such delays shall be excused." While the term "epidemic" is not defined, neither Washington Crown nor Defendants appear to assert that the COVID-19 pandemic is not an "epidemic" for purposes of the force majeure provision. Instead, the parties focus on the applicability of this provision to rent, the duration of the "epidemic," and the extent to which Hollywood Theaters' nonperformance was within its own control. *See Gulf Oil Corp. v. FERC.*, 706 F.2d 444, 454 (3d Cir.1983) ("In order to use force majeure events to excuse nonperformance, Gulf must show that it tried to overcome the results of the events' occurrences by doing everything within its control to prevent or to minimize the event's occurrence and its effects"). The Court addresses these arguments in turn.

The force majeure clause excuses delay in the performance of the "obligations contemplated under [the] Lease." Clearly, one of Hollywood Theaters' obligations under the Lease is the payment of rent to Washington Crown. The Lease does not include any express language that excludes rent payments from delays excused by the force majeure provision. *See, e.g., In re CEC Ent., Inc.*, 625 B.R. 344, 354 (Bankr. S.D. Tex. 2020) (enforcing an exclusion from the force majeure clauses of multiple Chuck E. Cheese restaurant leases for tenant's "inability to pay any sum of money"). Thus, a plain reading of the contract compels the conclusion that delays in the payment of rent due to an epidemic or "any other cause beyond the reasonable control" of either party is an event of force majeure and such delays are "excused." Otherwise, as Hollywood Theaters argues, the narrow construction of the force majeure clause urged by Washington Crown would render it as virtually meaningless despite its clear language that delays in the performance of obligations under the Lease are excused by the occurrence of a defined force majeure event.

However, the Court concludes that issues of fact preclude the relief sought by Washington Crown. First, while Washington Crown cites to Hollywood Theaters' admission that it could have reopened its movie theater at various times and in varying capacities between June 2020 and the expiration of the Lease in May 2021, this does not necessarily support a conclusion that the force majeure event, i.e., the epidemic, had ended. Indeed, whether an epidemic or "any other cause beyond the reasonable control" of Hollywood Theaters still existed as of the end of the Lease is a factual issue that cannot be resolved by the pleadings. For that reason alone, the motion for judgment on the pleadings must be denied. Moreover, if, in fact, it is determined that the force majeure event had not ended by the expiration of the Lease, the Lease is silent regarding whether delayed obligations are excused or survive its expiration.

Finally, because there are issues of fact that cannot be resolved at this juncture, the Court declines to dismiss any of Defendants' affirmative defenses with prejudice as Washington Crown requests.

## V. Conclusion

For these reasons, Washington Crown's partial motion for judgment on the pleadings will be denied. An appropriate order follows.

BY THE COURT:

Dated: March 3, 2022

s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge